## AFFIDAVIT

Affiant, Terry T. Helton, a Task Force Officer (TFO) with the Drug Enforcement Administration, having been duly sworn according to law, deposes and states:

1. Affiant is an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. 2610(7), and empowered by law to conduct investigations, make arrests, execute search warrants, and seize property in connection with violations of Title 18, United States Code and Title 21, United States Code. Affiant has been assigned to the DEA Cleveland District Office in Cleveland, Ohio since April 2013.

## TRAINING AND EXPERIENCE

2. Affiant has been employed by the Ohio State Highway Patrol for approximately twenty five (25) years. Affiant has participated in investigations involving drug trafficking and money laundering. Affiant has assisted and directed investigations involving drug trafficking and money laundering that resulted in the successful prosecution at both the state and federal level.

3. As a DEA Task Force Officer, Affiant has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws

1

contained in Title 21, United States Code, as well as in the execution of the same. In addition, Affiant has on numerous occasions, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841. Affiant has successfully conducted numerous investigations that have resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds. Affiant has further conducted surveillance operations of drug traffickers, and has interviewed numerous persons personally involved in drug trafficking. Affiant has also supervised numerous confidential sources during controlled purchases of narcotics. Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of, the methods, manner, and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

## BASIS OF INFORMATION

4. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by agents and/or officers of the Drug Enforcement Administration (DEA), Ohio State Highway Patrol (OSHP), or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG) computer system, and other known public database computer systems, by members herein described.

5. Since the Affidavit is being submitted for the limited purpose of securing an arrest warrant, your Affiant has not included each and every fact known to her concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to establish the foundation for the issuance of the arrest warrant.

## FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

### SUMMARY OF PROBABLE CAUSE

6. Between July 2014 and May 2015, ALEXIS MASSA conspired to receive approximately (51) kilograms of cocaine from Cooperating Defendant 1 (hereafter, "CD-1") and sell the cocaine to unknown persons in the Northern District of Ohio. Massa distributed approximately thirty-four kilograms of cocaine between approximately August 2014 and December 2014.[1] MASSA conspired to receive an additional seventeen kilograms of cocaine in May 2015, but the cocaine was seized by law enforcement.

7. Alexis MASSA was intercepted speaking over the telephone with CD-1 in the fall of 2014. These intercepted discussions related to the collection of money for previously provided cocaine. CD-1 later confirmed to law enforcement that one of the intercepted conversations was about collecting money for the cocaine.

8. In May 2015, law enforcement seized approximately seventeen kilograms of cocaine in a vehicle driven by Christopher Marrero-Camacho on the Ohio Turnpike near Amherst, Ohio. CD-1 was traveling in a second vehicle in tandem with Marrero-Camacho's vehicle. Shortly after Marrero-Camacho was

---

[1] During one interview, CD-1 stated that each of these thirty-four kilograms weighed approximately 2-3 ounces less than a full kilogram.

detained, he called his paramour and instructed her to call a telephone number subscribed to by Alexis MASSA.

### RELIABILITY OF INFORMATION PROVIDED BY CD-1

9. Cooperating Defendant 1 (CD-1) has provided information to agents of the U.S. Drug Enforcement Administration since February 2016. The information provided by CD-1 has been corroborated, to the extent possible, by other investigative methods such as interviews of other witnesses, T-III wire intercepts, and surveillance. CD-1 provided information on multiple occasions in exchange for sentencing consideration on a federal drug trafficking case. CD-1 has multiple prior arrests for drug trafficking and weapons-related offenses. In this Affidavit, the surveillance observations and intercepted telephone calls involving CD-1 occurred while CD-1 was a target of investigation and CD-1's activities were not being directed by law enforcement.

### PROBABLE CAUSE TO BELIEVE ALEXIS MASSA USED (216) 533-9418

10. On October 22, 2014, at approximately 11:32 a.m., CD-1 received an incoming call[2] from a then-unidentified male who utilized cellular phone number 216-533-9418. CD-1 later identified the user of 216-533-9418 as Alexis MASSA. During the

---

[2] On September 29, 2014, DEA SA Paul Stroney appeared before U.S. District Judge Solomon Oliver, Jr. and obtained court authorization to conduct T-III wire interception on a cellular telephone used by CD-1 (hereafter referred to as "[TT-2]"). On October 29, 2014, SA Paul Stroney appeared before U.S. District Judge James S. Gwin and obtained court authorization to continue wire interception of [TT-2] for an additional thirty days.

5

call, MASSA and CD-1 agreed to meet in approximately thirty minutes. Agents established surveillance of CD-1. At approximately 12:45 p.m., DEA Task Force Officer Edwin Cuadra observed CD-1 on the front porch of 12521 Brooklawn Avenue, Cleveland, Ohio. At approximately 1:00 p.m., DEA SA Hauns Charters observed CD-1 depart the residence in his/her vehicle.

11. In October 2014, SA Paul Stroney queried Cuyahoga County Auditor's Office records and found that Alexis MASSA and Melinda BORS were the property owners of 12521 Brooklawn Avenue, Cleveland, Ohio. SA Stroney queried Cuyahoga County Probate Court Marriage License records and found that on August 28, 2006, Alexis MASSA married Melinda S BORS.

12. On October 28, 2014, agents conducted surveillance at 12521 Brooklawn Avenue, Cleveland, Ohio and observed a Chevrolet Tahoe registered to Alexis MASSA. The vehicle's registration listed MASSA's address as 12521 Brooklawn Avenue, Cleveland, Ohio 44111.

### INFORMATION PROVIDED BY CD-1

13. CD-1 stated that during the summer of 2014, he/she received a shipment of thirty-four kilograms of cocaine in Cleveland, Ohio. CD-1 stated he/she initially delivered seventeen kilograms of cocaine to Alexis MASSA[3]. CD-1 stated

---

[3] CD-1 referred to MASSA by a different last name, but later positively identified a photograph of Alexis MASSA.

he/she sold each kilogram of cocaine to MASSA for $38,000. CD-1 stated that after MASSA sold the first seventeen kilograms, he/she provided five more kilograms at a time to MASSA until all of the thirty-four kilograms were sold. CD-1 stated MASSA paid him/her every few days for the cocaine. CD-1 stated MASSA sold off the thirty-four kilograms of cocaine in approximately two months.

14. CD-1 stated that he/she engaged in a phone call with MASSA October 1, 2014 at 4:58 p.m.. Agents did intercept a phone call between CD-1's prior telephone and (216) 533-9418 on October 1, 2014 at 4:58 p.m. CD-1 identified the voice of the user of (216) 533-9418 as Alexis MASSA. CD-1 explained that during this call, MASSA's statement that he had "5" or "6" meant that he had money to pay for five or six kilograms of cocaine ready to give to CD-1.

15. On March 3, 2016, CD-1 positively identified a photograph of Alexis MASSA. CD-1 also positively identified a photograph of MASSA's wife.

### SUMMARY OF INTERCEPTIONS BETWEEN CD-1 AND ALEXIS MASSA

16. On October 22, 2014, at approximately 11:32 a.m., CD-1 received an incoming call from Alexis MASSA, using cellular phone number 216-533-9418. As detailed above, CD-1 later identified the user of 216-533-9418 as Alexis MASSA. During the call, MASSA and CD-1 agreed to meet in approximately thirty

minutes. Agents established surveillance of CD-1. At approximately 12:45 p.m., DEA Task Force Officer Edwin Cuadra observed CD-1 on the front porch of 12521 Brooklawn Avenue, Cleveland, Ohio. At approximately 1:00 p.m., DEA SA Hauns Charters observed CD-1 depart the residence in his/her vehicle.

17. On October 1, 2014, at approximately 4:58 p.m., **CD-1** called Alexis MASSA at telephone number (216) 533-9418. During part of the call, **CD-1 and MASSA** engaged in the following dialogue in Spanish:

> **MASSA:** Everything is fine, brother. Thank God. Hey, brother, what was I going to tell you? I have one (1) ready for you but I'm... I'm working on another one to see if I can get a little more. So then the other one... [stammers] the... the... the one that the friend sent back, I gave that one to Luis.
>
> **CD-1:** Yes. Mm-hum.
>
> **MASSA:** And I told him that I was only going to [unintelligible] two (2) with him. That's why I called him. He told me that he was going to call me back shortly, but I do have some available. Well, if you want to [unintelligible] this...
>
> [VOICES OVERLAP]
>
> **CD-1:** All right... all right. Yeah, if you want, let's wait until tomorrow to see what happens.
>
> **MASSA:** Yes, because by tomorrow, I can guarantee you that I will have the two (2) and we're going to be [unintelligible]. You know what I'm saying?

> [VOICES OVERLAP]
>
> CD-1: Can I ask... Can I... It's just that the other company is calling me. The one regarding these... Those of that one... Of that... [mumbles] the area of twenty-four (24). Do you remember?
>
> MASSA: Yes, Yes, Yes.
>
> CD-1: That telephone area code.
>
> MASSA: There are, there are like five (5) of those. I think that... There are about five (5) or six (6) already that they gave me over here. I have that available at hand right here.
>
> CD-1: That's fine. All right, then. All right...
>
> [VOICES OVERLAP]
>
> MASSA: Okay...
>
> CD-1: ...Let's wait until tomorrow and see what happens tomorrow.
>
> MASSA: Yes, by tomorrow... [stammers] tomorrow the money will be a lot more complete, brother.

As stated previously, CD-1 later informed law enforcement that during this call, MASSA was saying he had payment for five or six kilograms of cocaine ready to pay to CD-1.

18. On October 11, 2014, at approximately 12:29 p.m., CD-1 placed an outgoing call to (216) 533-9418, used by Alexis MASSA. During part of the call, CD-1 and MASSA exchanged the following

9

dialogue in Spanish:

> MASSA: Well, I had [unintelligible]... I had a little something for you so that you could come pick it up.
>
> CD-1: That's fine. At what time do you want me to see you? Can I see you a little later...
>
> [voice overlap]
>
> MASSA: As soon... as soon as possible, brother, because honestly I'm [mumbles] I've been calling you for about two (2) hours. I have been calling you because... [unintelligible] helping out a little old man. At the country, a buddy of mine. To do, to do a barn...
>
> [voice overlap]
>
> CD-1: I'm I'm ...
>
> MASSA: I left/kept the hour here, but I wanted to give you that before I leave...

Affiant believes that during this call, MASSA was advising CD-1 that he had money ready to pay CD-1 for previously provided cocaine.

19. On October 19, 2014, at approximately 1:33 p.m., CD-1 placed an outgoing call to (216) 533-9418, used by Alexis MASSA. During part of this call, MASSA stated, in Spanish, "I have a little something for you, and I have been calling you these past days to give you the rest of that, you know. Of the, of the..." Affiant believes that during this call, MASSA was advising CD-1 that he had money ready to pay CD-1 for previously provided drugs.

### TRAFFIC STOP OF CHRISTOPHER MARRERO-CAMACHO IN MAY 2015

20. On May 20, 2015, at approximately 8:07 p.m., Ohio

10

State Highway Patrol (OSHP) Trooper Michael Trader conducted a traffic stop of a gray 2008 Nissan Rogue, displaying Ohio registration GKE4911 (hereafter referred to as the "Nissan Rogue"), which had been traveling eastbound on Interstate 80 near Amherst, Ohio. OSHP Trooper Trader stopped the Nissan Rogue based on an observed traffic violation of following too closely in violation of ORC 4511.34.

21. During OSHP Trooper Michael Trader's stop of the Nissan Rogue, he identified the vehicle's driver as Christopher Marrero-Camacho. OSHP Trooper Trader utilized his trained narcotics detection canine to conduct a free-air sniff of the exterior of the Nissan Rogue. OSHP Trooper Michael Trader's canine is certified by the Ohio Peace Officer Training Academy (OPATA) and was most recently certified on or about October 2014. OSHP Trooper Michael Trader is also an OPATA certified canine assessor. During this sniff, the narcotics detection canine positively alerted to the presence of the odor of controlled substances. Based on the positive canine alert, OSHP Trooper Trader and Sergeant Neil Laughlin began a probable cause search of the Nissan Rogue. During the ensuing search of the Nissan Rogue, troopers located three separate aftermarket "trap" compartments containing a total of sixteen kilogram-sized bricks and two half-kilogram sized bricks of suspected narcotics. Trooper Trader conducted a field test on two of the kilogram

11

sized bricks, which yielded positive results for the properties of cocaine.

22. Agents later reviewed the Ohio State Highway Patrol (OSHP) in-car recording equipment, which captured Christopher MARRERO-CAMACHO's statements after he was placed in the rear of the OSHP vehicle. Between approximately 8:06 p.m. and 8:18 p.m., MARRERO-CAMACHO made several statements in Spanish, such as "I'm f**ked," "God help me with this," and "Oh my God, help me with this. I'm not doing this again." While still inside the OSHP vehicle, MARRERO-CAMACHO used his cellular telephone to place an outgoing call. MARRERO-CAMACHO stated, "Baby, I got stopped by the police, listen, baby I love you...I think that I shit myself...Call Shorty and tell him, please, please." The other party indicated they didn't know his number. MARRERO-CAMACHO replied, "It's Mandy's 7 5 2 2 6 4 2." It should be noted that "Shorty" is a nickname used by Alexis MASSA, and his wife's first name is Melinda.

23. On May 28, 2015, SA Paul Stroney served administrative subpoena I8-15-648728 on T-Mobile requesting subscriber and toll information for telephone number (440) 752-2642. The subpoena response indicated this telephone number was subscribed to Alexis MASSA at 12521 Brooklawn Avenue, Cleveland, Ohio 44111.

24. On June 17, 2015, SA Paul Stroney served administrative subpoena I8-15-702686 on T-Mobile requesting

12

subscriber and toll records for 216-854-5040. The subpoena response indicated this telephone number was subscribed to Christopher M CAMACHO.

25. SA Stroney reviewed toll records for Alexis MASSA's telephone number (440-752-2642) and found that on May 20, 2015, at approximately 8:20 p.m., MASSA's telephone received an incoming call from 216-854-5040 (subscribed to Christopher M CAMACHO).

### INFORMATION REGARDING CHRISTOPHER MARRERO-CAMACHO'S ATTORNEY

26. On September 3, 2016, agents executed a federal search warrant at CD-1's residence. During the search of a second-floor bedroom, agents located two receipts from a specific Law Firm, LLC. One receipt was dated August 5, 2015, and the other receipt was dated August 6, 2015. The signature line on both receipts listed a specific attorney. Both letters listed "Re: United States of America v. Christopher Marrero Camacho [next line] United States District Court for the Northern District of Ohio [next line] Case No.: 1:15-MJ-03102-GW." The top of both letters listed Christopher Camacho c/o Melinda25@sbcglobal.net. The receipt dated August 5 listed a Criminal Flat Fee Pre-trial Retainer Payment of $5,000. The letter stated "Pursuant to our written agreement, the flat fee pre-trial retainer has been paid in full, related to my representation of Christopher M. Camacho in the case referenced above. Please contact my office with any

13

questions. Thank you." The letter dated August 6 listed a Criminal Flat Fee Pre-trial Retainer Payment of $25,000 and included a similar message stating it was paid in full related to representation of Christopher M. Camacho in the case referenced above.

27. On June 23, 2015, Christopher Marrero-Camacho had his initial appearance at the federal courthouse in Cleveland, Ohio. After the initial appearance, SA Paul Stroney observed Marrero-Camacho's then retained attorney, speaking with Melinda MASSA in a first floor hallway of the courthouse. Based on this, SA Paul Stroney believes Melinda MASSA paid the retainer fee for Christopher Marrero-Camacho.

## CONCLUSION

28. Task Force Officer Terry Helton, Drug Enforcement Administration, being duly sworn according to law, deposes, and states that the facts stated in the foregoing Affidavit are true and correct to the best of his knowledge, information, and belief.

29. Based on your Affiant's training, experience and the facts set forth in this Affidavit, your Affiant believes that there is probable cause to believe that Alexis Massa did knowingly and intentionally conspired with others to distribute cocaine, a schedule II controlled substance, in violation of

Title 21, U.S.C., Section 841(a)(1), and did conspire to distribute cocaine in violation of Title 21, U.S.C, Section 846.

TFO Terry Helton
Terry Helton
Task Force Officer
Drug Enforcement Administration

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Crim R. 41(d)(3) on ~~May~~ June 8, 2017 at 9:10 am.

Thomas M. Parker
United States Magistrate Judge
Northern District of Ohio, Eastern Division